IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01800-PAB-MEH

DR. GREGORY DUMANIAN, and
ADVANCED SUTURE, INC.,

    Plaintiffs,

v.

MARK SCHWARTZ and
MARK ALAN SCHWARTZ REVOCABLE TRUST DATED 12/1/2017,

    Defendants,

## ORDER

This matter is before the Court on the August 25, 2020 order of the Court directing the parties to file briefs addressing whether or not they oppose transfer of this action to the United States District Court for the Northern District of Illinois. Docket No. 34. Plaintiffs filed a brief in opposition [Docket No. 37] and defendants filed a brief consenting to transfer. Docket No. 38.

**I. BACKGROUND**

This case is part of a dispute between Gregory Dumanian ("Dr. Dumanian") and Mark A. Schwartz ("Schwartz") as to who controls Mesh Suture, Inc. ("Mesh Suture"), and its sister company Advanced Suture, Inc. ("Advanced Suture"). *See* No. 19-cv-03218-PAB-GPG (D. Colo.); No. 19-cv-06771 (N.D. Ill.) (Lee, J.) (the "Illinois lawsuit"). In the Illinois lawsuit, filed by Dr. Dumanian and his family, Dr. Dumanian alleges that Schwartz obtained invalid board resolutions (the "Board Resolutions") that gave

Schwartz control of Mesh Suture from Dr. Dumanian by, essentially, extorting him with the approximately $4 million in Mesh Suture's bank account. *See* No. 19-cv-06771, Docket No. 16 at 13-18. The Dumanians seek, *inter alia*, rescission of the Board Resolutions in the Illinois lawsuit. *Id*. at 20-22. In this lawsuit, Dr. Dumanian alleges that Schwartz used the Board Resolutions to issue himself shares of stock in Advanced Suture. No. 20-cv-01800, Docket No. 1 at 18. Although Dr. Dumanian claims that the Board Resolutions do not apply to Advanced Suture on their own terms, in the alternative he seeks rescission of the Board Resolutions. *Id*. at 28-29. Schwartz claims that a settlement agreed to on September 10, 2019 gives him control over both companies. Docket No. 19 at 3. Dr. Dumanian seeks rescission of that settlement agreement in the Illinois lawsuit. No. 19-cv-06771, Docket No. 16 at 22-23. Due to the similarity in between this case and the Illinois lawsuit, the Court ordered the parties the brief whether this case should be transferred to the Northern District of Illinois under the first-to-file rule. *See* No. 20-cv-01800, Docket No. 34.

## II. LEGAL STANDARD

The first-to-file rule applies "when two district courts have jurisdiction over the same controversy, affording deference to the first filed lawsuit." *Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009) (unpublished); *see also Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (recognizing general rule that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case"); *Wakaya Perfection LLC v. Youngevity International, Inc.*, 910 F.3d 1118, 1124-27 (10th Cir. 2018) (noting that the first-to-file

analysis requires a court to consider the chronology of events, the similarity of the parties and issues or claims, and any equitable considerations).

The rule is a discretionary doctrine, resting on "principles of comity and sound judicial administration" and is concerned with avoiding duplicative litigation, rulings which impinge on the authority of sister courts, and piecemeal litigation. *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 603 (5th Cir. 1999). As a result, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id.; accord Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010). Courts generally hold that the first-to-file rule requires analysis of three factors: "(1) the chronology of events; (2) the similarity of the parties involved; and (3) the similarity of the issues or claims at stake." *Wakaya Perfection*, 910 F.3d at 1124 (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)). However, "simply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case." *Hospah Coal*, 673 F.2d at 1164.

The Tenth Circuit does not appear to have directly considered the appropriate roles of the first-filed and second-filed courts in applying the first-to-file rule. Courts confronted with the issue have suggested that the proper course is for the second-filed court to make the initial determination of whether the two actions substantially overlap. *See Nash*, 724 F. Supp. 2d at 1166 (citing *Cadle*, 174 F.3d at 605). If a second-filed court decides that question in the affirmative, it may stay the case, transfer it to the first-filed court, or, in rare cases, dismiss the case entirely; it then falls to the first-filed

3

court "to determine whether subsequently filed cases involving substantially similar issues should proceed." *Cadle*, 174 F.3d at 606 (quotations omitted); *see also Nash*, 724 F. Supp. 2d at 1167 ("This general rule of deference includes deferring to first-filed courts for the application of any equitable exceptions to the first-to-file rule, once the second-filed court has determined that there is sufficient overlap between the two cases."). The Court finds this approach prudent and consistent with the principles of comity and proper judicial administration. *See Crocs, Inc. v. Cheng's Enters., Inc*., No. 06-cv-00605-PAB-KMT, 2015 WL 5547389 at * 3 (D. Colo. Sept. 21, 2015) (adopting this approach and collecting cases).

## III.  ANALYSIS

Plaintiffs argue that the first-to-file rule does not favor transfer here because this case is distinct from the Illinois lawsuit and it is more just and efficient for the Court to rule on the pending motions in this case. *See generally* Docket No. 37. Defendants argue that the chronology, similarity of parties involved, and similarity of issues point towards transfer, and there are no equitable factors weighing against transfer. Docket No. 38.

### A.  Chronology

"[D]etermining the chronology of events typically requires only a comparison of the two filing dates." *Wakaya Perfection*, 910 F.3d at 1124. Plaintiffs do not dispute that the Illinois lawsuit was filed first. *See generally* Docket No. 37. The Court finds that the Illinois lawsuit was filed first and that this factor weighs in favor of transfer.

*Compare* Docket No. 1 (complaint filed June 18, 2020); *with* No. 19-cv-06771, Docket No. 1 (complaint filed October 11, 2019).

### B.  Similarities of Parties

Plaintiffs argue that there is limited overlap of parties because (1) neither Advanced Suture nor the Mark Alan Schwartz Revocable Trust Dated 12/1/2017 (the "Trust") are parties in the Illinois lawsuit; (2) Randa and Adom Dumanian, Dr. Dumanian's wife and son respectively, are plaintiffs in the Illinois lawsuit but not in this lawsuit; and (3) the Illinois lawsuit names six defendants who are not parties in this case.  Docket No. 37 at 3.  Schwartz claims that, because he and Dr. Dumanian are the two parties with an interest in the outcome of the control dispute of Mesh Suture in the Illinois lawsuit, and are parties to both lawsuits, the parties are substantially similar.  Docket No. 38 at 6.

The Court may place less weight on similarities of parties and claims when there are concurrent federal cases than when one is a state case because there is no risk of depriving a litigant of a federal forum.  *Wakaya Perfection*, 910 F.3d at 1127 (citing *Ritchie Capital Mgmt., LLC v. BMO Harris Bank, N.A.*, 868 F.3d 661, 664 (8th Cir. 2017)).  Additionally, the parties "need not be necessarily identical; only similarity or substantial overlap is required."  *ACU Dev., LLC v. Modern Point, LLC*, No. 19-cv-01063-MEH, 2019 WL 4751710, at *2 (D. Colo. Sept. 30, 2019) (quotations and citation omitted).  The addition of other defendants does not defeat substantial similarity.  *See Animal Health Intern., Inc. v. Livingston Enter., Inc.*, No. 12-cv-00369-LTB, 2012 WL

1439243, at *3 (D. Colo. Apr. 26, 2012) (finding that reverse roles and additional defendant in other action did not defeat substantial similarity).

Schwartz and Dr. Dumanian are parties in both cases. Dr. Dumanian purports to bring this case on behalf of himself and Advanced Suture, but Schwartz argues that Advanced Suture is now controlled by Schwartz. *See* Docket No. 1; Docket No. 19 at 3. Schwartz is the trustee of the Mark Alan Schwartz Revocable Trust Date 12/1/2017, in whose name he purported to purchase two shares of Advanced Suture. Docket No.1 at 2, ¶ 3. Schwartz states that he and the Trust do not have conflicting interests. Docket No. 38 at 6.

The additional plaintiffs in the Illinois lawsuit are Dr. Dumanian's wife and son. Docket No. 37 at 3. The additional defendants are (1) Schwartz's wife; (2) Schwartz's daughter; (3) Schwartz's son; (4) the girlfriend of Schwartz's son; (5) Tax Lien Law Group, LLC, which Schwartz is the sole member of; and (6) Sullion, LLC, which Dr. Dumanian argues Schwartz is the sole member of, but which Schwartz denies being a member of (collectively, along with Schwartz, referred to herein as the "Schwartz parties"). No. 19-cv-06771, Docket No. 26 at 3-4, ¶¶ 5-10. The Schwartz parties filed counterclaims against the Dumanians and a third-party complaint against Zabelle Crosson ("Crosson"). *Id.*, Docket No. 93 at 1.

While there are additional parties in the Illinois lawsuit, the Court finds that there is still substantial similarity. The key players in both cases are Schwartz and Dr. Dumanian, who are present in both cases. Dr. Dumanian and Advanced Suture are

represented by the same law firm in this case as the Dumanians in the Illinois lawsuit.[1] *See Nash*, 724 F. Supp. 2d at 1169 (finding parties were substantially similar where they were represented by the same counsel and there was no indication of a conflict); *see also Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1298 (D. Kan. Jan. 12, 2010) (finding substantially similarity of parties despite fact that one case had larger number of claimants).  While Dr. Dumanian has brought this case on behalf of himself and Advanced Suture, the control of Advanced Suture is disputed.[2]  *Compare* Docket No. 1 at 4, ¶ 8 ("Dr. Dumanian . . . has always been the sole shareholder of [Advanced Suture]"); *with* Docket No. 19 at 3, ¶ 4 (arguing that Schwartz is the CEO and Chairman of the Board of Advanced Suture).  Advanced Suture as a party to this case but not the Illinois lawsuit is insufficient to defeat similarity of the plaintiffs in these actions.[3]

Schwartz is representing himself and the Trust in this case, but has counsel in the Illinois lawsuit.  Schwartz's counsel in the Illinois lawsuit is counsel for all of the Schwartz parties.  The interests of the Schwartz parties in the Illinois lawsuit are aligned because they are represented by the same counsel, and they are substantially similar

---

[1] The Dumanians have additional counsel from Akerman, LLP in the Illinois lawsuit who is not counsel in this case.

[2] Schwartz has also filed a notice of entry of appearance on behalf of Advanced Suture.  *See* Docket No. 16.

[3] In the Illinois lawsuit, Schwartz filed a motion to intervene on behalf of Mesh Suture, Mesh Suture HK, and Advanced Suture.  No. 19-cv-06771, Docket No. 34.  The court denied it because, while the dispute over who controls the entities is pending, neither plaintiffs nor defendants may direct any of the entities to intervene on their behalf.  *Id.*, Docket No. 91 at 5, 7.

to defendants in this case since Schwartz is the trustee of the Trust.  *See* Docket No. 1 at 2, ¶ 3.

This leaves Crosson, who the Schwartz parties in the Illinois lawsuit have brought third party claims against for libel, civil conspiracy, and trespass to money and chattels.  No. 19-cv-06771, Docket No. 93 at 79, 94, 99.  Crosson is represented by different counsel from the Dumanians.  *See id.*, Docket Nos. 105, 106.  However, an additional party is not a bar to substantial similarity.  *See Animal Health*, 2012 WL 1439243, at *3.  Because Schwartz and Dr. Dumanian are the driving parties in both lawsuits, the Court finds that there is substantial similarity of parties between this case and the Illinois lawsuit.

### C.  Similarities of Claims

In the Illinois lawsuit, the Dumanians bring claims for (1) rescission of the September 5, 2019 Board Resolutions due to economic duress; (2) rescission of the September 10, 2019 settlement agreement due to economic duress; (3) declaratory judgment regarding the parties' rights to designate directors; (4) declaratory judgment regarding Dr. Dumanian's termination of Schwartz as CEO of Mesh Suture; and (5) unjust enrichment.  No. 19-cv-06771, Docket No. 16 at 20-27.  The Dumanians seek control of Mesh Suture.  In this case, Dr. Dumanian brings claims for (1) securities fraud; (2) civil theft; (3) declaratory judgment of the invalidity of Schwartz's Advanced Suture stock; (4) declaratory judgment of the inapplicability of the September 5, 2019 Board Resolutions to Advanced Suture; (5) in the alternative, declaratory judgment that the September 5, 2019 Board Resolutions are invalid; (6) in the alternative, rescission

of the September 5, 2019 Board Resolutions due to duress; and (7) declaratory judgment regarding Schwartz's termination as CEO of Advanced Suture. No. 20-cv-01800, Docket No. 1 at 21-30.

Dr. Dumanian argues that the claims in the two cases are not similar because, if the Court finds that the September 5, 2019 Board Resolutions do not apply to Advanced Suture, then there is no overlap with the Illinois lawsuit. *See* Docket No. 37 at 5-6. Dr. Dumanian states that in this case he seeks primarily to bring claims for securities fraud, civil theft, and a declaration that the Board Resolutions do not apply to Advanced Suture, while his claims on the invalidity of the Board Resolutions are only asserted in the alternative. *Id.* at 5. Dr. Dumanian argues that "it is crucial to point out that the only reason Plaintiffs asserted their alternative claims is because Schwartz persists in relying on the Invalid Board Resolutions as somehow vesting him with control over [Advanced Suture]." *Id.* Further, Dr. Dumanian argues that as of the filing of the Illinois lawsuit, Schwartz had not claimed to own shares in Advanced Suture so there was no need to discuss Advanced Suture in the Illinois lawsuit. *Id.* at 4.

Dr. Dumanian's attempt to pick apart the two cases is unavailing because, as in *ACU Dev.*, "the issues are substantially similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues." 2019 WL 4751710, at *2 (quotation marks and citation omitted). Schwartz purported to issue two shares of Advanced Suture stock to the Trust as CEO and Chairman of the Board of Advanced Suture. Docket No. 7-12 at 3. Schwartz argues that the Board Resolutions apply to both Mesh Suture and Advanced Suture, while Dr. Dumanian argues that they only

9

apply to Mesh Suture.  See Docket No. 38 at 7; Docket No. 37 at 4.  The Board Resolutions form the basis of the Illinois lawsuit.  No. 19-cv-06771, Docket No. 16 at 20-27.  The contested Board Resolutions state:

> A meeting of the Founding Shareholders, Series A Shareholders Representative, and Board of Directors (the "Board"') of Mesh Suture, Incorporated, a Puerto Rico Corporation and its wholly owned subsidiary Mesh Suture Inc (HK) Ltd., and their Affilliate [sic], Advanced Suture Corporation ("Mesh") (Collectively, the "Corporation") was held on this date by written communication.

No. 20-cv-01800, Docket No. 1-9 at 1.  The Settlement Agreement states:

> This MUTUAL SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is made and entered into as of September 10, 2019, by and among of Mesh Suture, Incorporated, a Puerto Rico Corporation and its wholly owned subsidiary Mesh Suture Inc (HK) Ltd., and their Affiliate, Advanced Suture Corporation ("Mesh") . . .

Docket No. 19-1 at 1.  Dr. Dumanian argues that, while the Board Resolutions "superficially (and sloppily) mention[] [Advanced Suture], [they] have nothing to do with that company."  Docket No. 37 at 4.  However, the Board Resolutions show that the two cases hinge on the outcome of the same legal and factual issues.  The facts leading up to the signing of the Board Resolutions and settlement agreement are the same for both this case and the Illinois lawsuit.  Dr. Dumanian attempts to distinguish the facts by arguing that this case is more concerned with Schwartz's actions in front of the U.S. Patent and Trademark Office, where Schwartz allegedly made improper filings that alerted Dr. Dumanian to the fact that Schwartz had issued himself two shares of Advanced Suture.  Id.  However, because the authority to issue the Advanced Suture shares is the factual basis of this case, which Schwartz claims comes from the Board

10

Resolutions, *see* Docket No. 1 at 20, ¶¶ 82, 85, there is substantial overlap between the cases.

The claims are not identical, but the same factual background of the Board Resolutions could be determinative of both cases. The asserted theories of recovery need not mirror each other so long as the underlying claims arise out of the same improper actions by the defendants, which is the case here. *See Chieftain Royalty Co. v. XTO Energy, Inc.*, 2011 WL 1533073, at *2 (E.D. Okla. Apr. 22, 2011). The Court finds that both cases involve the application of the same Board Resolutions and are thus substantially similar. *Cf. Antero Res. Corp. v. S. Jersey Res. Group, LLC*, No. 15-cv-00656-REB-MEH, 2015 WL 13185990, at *3 (D. Colo. Oct. 22, 2015), *report and recommendation adopted*, 2016 WL 8578553 (finding substantial similarity of issues where actions arose out of the same contracts and both involved a determination of who breached them).

### D. Equitable Considerations

The Tenth Circuit has noted that equitable considerations allow a court to disregard the first-to-file rule if it would prevent a misuse of litigation or where it would reward forum shopping. *Wakaya Perfection*, 910 F.3d at 1127. In addition, the Tenth Circuit noted that "the equitable factors bearing on state-federal concurrent litigation may also apply so long as courts observe that state-federal concurrent litigation triggers a different test." *Id.* The test derived from *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), governs state-federal concurrent litigation and instructs a court to consider (1) the possibility that one of the two courts has

exercised jurisdiction over property; (2) the inconvenience from litigating in the federal forum; (3) the avoidance of piecemeal litigation; (4) the sequence in which the courts obtained jurisdiction; (5) the "vexatious or reactive nature" of either case; (6) the applicability of federal law; (7) the potential for the state-court action to provide an effective remedy for the federal plaintiff; and (8) the possibility of forum shopping. *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). The Court recognizes that this is a different test than the first-to-file rule – indeed, factors two, six, and seven are irrelevant when both cases are brought in federal court – but will examine these factors only to consider whether any of them counsel against transferring this case to the Northern District of Illinois.

There are no equitable factors counseling against transfer – if anything, equitable factors weigh in favor of transfer. To transfer this case to the Northern District of Illinois would not reward forum shopping because Dr. Dumanian chose Colorado as the forum for this case when he could have brought it in the Northern District of Illinois. Additionally, the Illinois lawsuit is not an anticipatory lawsuit in a preferred forum. *See Baatz,* 814 F.3d at 792 (noting that an anticipatory suit (usually a declaratory judgment) in a preferred forum is an equitable consideration that counsels against transferring the later filed suit to the forum of the anticipatory suit). Transferring the case would not be a misuse of litigation "in the nature of vexatious an oppressive foreign suits," *Wakaya Perfection*, 910 F.3d at 1127 (quotations marks omitted), because Schwartz consents to the transfer and Dr. Dumanian is a citizen of Illinois. *See* Docket No. 38 at 10; No. 19-cv-06771, Docket No. 16 at 2, ¶ 1.

The avoidance of piecemeal litigation favors transfer because the Northern District of Illinois will be able to resolve all of the issues in these two cases. The Northern District of Illinois obtained jurisdiction first and there is no concern that transferring this case would reward forum shopping. The Court finds that the other *Colorado River* factors do not apply.

Dr. Dumanian argues that the Court should not transfer the case because this District has a greater interest in resolving the issues raised. Docket No. 38 at 6. However, the Court has considered the equitable factors the Tenth Circuit deems appropriate to consider and finds that none of them weigh against a transfer.

## IV. TRANSFER

Title 28 U.S.C. § 1404(a) provides in pertinent part that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under 28 U.S.C. § 1391(b), a civil action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced. Schwartz agrees that jurisdiction and venue are proper in the Northern District of Illinois. Docket No. 38 at 1 n.1. In applying § 1404(a), the Tenth Circuit has prescribed a number of factors for the district court to weigh. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991). However, the *Chrysler Credit Corp.* factors have little applicability in a case where transfer is under

13

the first-to-file rule.  *See Hubbard v. Argent Mortg. Co., LLC*, No.

15-CV-02375-WJM-CBS, 2016 WL 4537869, at *4 (D. Colo. Aug. 31, 2016).  Because

venue is proper in the Northern District of Illinois and the first-to-file rule warrants

deference to the Northern District of Illinois, the Court will transfer this case to the

Northern District of Illinois.  *See id.* at *6 (finding that the goals of judicial economy and

consistency were better advanced by transferring, instead of staying the case).[4]

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Clerk of Court shall transfer this case to the United States

District Court for the Northern District of Illinois.  It is further

**ORDERED** that Plaintiffs' Motion for Preliminary and Permanent Injunction

[Docket No. 7] is **DENIED AS MOOT**.  It is further

**ORDERED** that Defendant Mark Schwartz's Motion to Dismiss and For

Sanctions for Perjury [Docket No. 19] is **DENIED AS MOOT**.  It is further

---

[4] Because the Court will transfer this case to the Northern District of Illinois, the Court declines to consider the pending motions and denies them as moot without prejudice.  *See McNaughton v. Lowecha*, *LLC*, 2018 WL 793789, at *11 (D.N.M. Jan. 10, 2018) (transferring case and denying as moot all pending motions).

**ORDERED** that this case is closed.

DATED March 31, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge